LAURA D. ROUNDS, Administrator, *v.* WILLIAM H. PHILLIPS et al.

[No. 83, October Term, 1934.]

*Decided January 16th, 1935.*

The cause was argued before BOND, C. J., URNER, OF-FUTT, and SLOAN, JJ.

*F. W. C. Webb,* with whom were *Carroll E. Bounds, William W. Travers,* and *Woodcock & Webb,* on the brief, for the appellant.

*Clarence W. Miles* and *Seymour O'Brien,* with whom were *Long & Johnson* and *Miles, Bailey & Williams,* on the brief, for the appellees.

URNER, J., delivered the opinion of the Court.

The declaration in this case is for the same alleged cause of action as that considered on appeal from a judgment for the defendants on demurrer, in 166 Md. 151, 170 A. 532. A reversal of the judgment then appealed from was followed by a trial of the present suit in the lower court, with the result that a verdict for the defendants was directed. The principal question on this appeal is whether the evidence was legally sufficient to charge the

defendants, or either of them, with actionable liability for the negligence of their minor son in causing the accident in which he and the plaintiff's son lost their lives. In addition to an exception to the instruction that the proof was legally inadequate to support any recovery in the case, there were a number of exceptions to rulings on the admissibility of evidence.

The averments of the present declaration are essentially similar to those quoted in the opinion by Judge Digges on the former appeal. The accident described in the declaration occurred about half past 5 o'clock on the morning of April 13th, 1933, when the nineteen-year-old son of the defendants, driving a Buick automobile at an excessive speed, on his return from a dance to his parents' home, negligently allowed the car to come into collision with a milk delivery truck which the plaintiffs' son was operating. The suit is by the mother, as administratrix of her son's estate, for the resulting injury which he consciously suffered before his death, and for the damage to his motor truck.

In the former opinion the ground of liability asserted against the defendants is thus stated (166 Md. 160, 170 A. 532, 535) : "The theory upon which the plaintiff seeks to recover against the defendants is that the defendants permitted, or failed to prohibit, the use of an automobile by their minor son, which son they knew, or should have known from facts known to them, was negligent, reckless, and incompetent in the operation of automobiles. The declaration alleges that the appellant's decedent was killed and his property damaged by the negligent and reckless use of the automobile by the deceased son of the defendants. The appellant does not seek recovery upon the theory that the negligence of the defendants' deceased son is imputable to the defendants, or that the said son was the agent or servant of the defendants; nor does she attempt to invoke the 'family car doctrine,' or any other relationship which would make the principle *respondent superior* apply. On the contrary, the theory upon which the declaration is drawn entirely eliminates vicarious neg-

ligence, and rests solely upon the primary negligence of the appellees themselves in permitting their son, alleged to have been habitually reckless, negligent, and incompetent in the operation of automobiles, to be in possession of and operate the Buick automobile described in the declaration at the time of the accident, when that habitual negligence, recklessness, and incompetence was known to the appellees, or should have been known to them from facts of which they had knowledge. In other words, the plaintiff invokes the principle involved in *Am. L. Inst., Restatement of the Law of Torts*, part IV, Negligence, chap. 2, sec. 260: 'One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or from facts known to him, should know to be likely because of his youth, inexperience or otherwise, to use it in a manner involving unreasonable risk of bodily harm to himself and others whom the supplier should expect to share in, or be in the vicinity of its use, is subject to liability for bodily harm caused thereby to them.' The group of the American Law Institute delegated to formulate and restate the principles contained in the law of torts, as gathered from previous authoritative statements of the courts and text-writers dealing with that subject, have enunciated the principle sought to be invoked in this case in the language above quoted."

The opinion, on the former appeal, after a review of decisions supporting the principle formulated in the Restatement, expressed the view that "the facts alleged in the declaration, and admitted to be true for the purpose of the decision on demurrer, are such as to create liability on the part of the defendants." Upon that subject the opinion further said (166 Md. 167, 170 A. 532, 538) :

"It has been suggested that there may be a distinction between the liability of the father and that of the mother, in other words, that the mother may be liable, and the father not, because the title and ownership of the Buick car operated by their deceased son at the time of the accident here complained of was in the mother. Under the facts of this case, that, in our opinion, does not create a

valid distinction. The son was a minor, and the father, as the controlling head of the family, had the authority and power to permit the use by the son of the mother's automobile, or to prohibit it. The facts are that in the first instance the father purchased and gave to the son the automobile, and had it titled in the son's name; that he unquestionably knew, or should have known, of the son's habits of intoxication and habitually reckless and negligent use of automobiles; he knew that the son had injured himself in an accident, and the father had personally warned the son in respect to the probable results of the son's recklessness; that the son lived with the father and mother, in their house; that the father knew of three convictions of the son for violation of the automobile law, one for exceeding the speed limit, another for reckless driving, and, finally, for driving an automobile while under the influence of liquor, these convictions extending over a period both before and after he bought and gave to the son the Buick automobile referred to; that the father knew, at the time of his son's conviction for driving under the influence of liquor, that his driver's permit was revoked, at that time the title to the Buick car being in the son, and that the license to operate the Buick automobile was also revoked, and it could not be used so long as the title remained in the son; that the father then participated in having the title to the automobile, which was formerly in the son, transferred to the mother, and actively interested himself in securing a return to the son of the driver's permit, in which effort he was only successful after securing an indemnity bond against loss resulting from accidents occasioned by the son's driving, this bond being in the amount of $5,000.

"We do not think that the title to the automobile, as shown by the records of the automobile commissioner of the state, is conclusive, but that the principle applies not only to the owner of an automobile but to any one who has the right to permit and the power to prohibit the use thereof. Having such power and authority, if he does not prohibit his minor son, who he knows is addicted to driv-

ing an automobile while under the influence of liquor and is habitually negligent and reckless in its use, there can be no valid distinction between him, under such circumstances, and one who has the record title to the automobile in question. In respect to the mother, the allegations are specifically as to her knowledge of her son's reckless and negligent propensities, and that she had exactly the same knowledge, or was in possession of facts from which such knowledge could be gained, as the father. Recognizing the principle upon which liability is based, as hereinbefore set forth, we are compelled to hold that if the facts as alleged are proven to the satisfaction of a jury, the defendants herein would be liable."

At the trial of this suit, the evidence failed to prove all of the particular allegations as to knowledge by the defendants of each of their son's violations of the motor vehicle law, and as to their participation in having his operator's license reissued after its revocation, but there was evidence tending to prove the following facts: That their son became the owner of two cars, a Buick and a Ford, while employed, at a salary of fifteen dollars per week, by the firm of which his father was a member; that the son regularly and permissively obtained supplies of fuel for his cars from the gasoline tank of the firm, which, his father testified, was used generally by the families of the partners; that in 1929 he was seriously injured when his automobile, which he was driving after dark at a speed of sixty miles an hour, struck a car standing almost wholly off the traveled way; that he was actually and reputedly a fast and reckless driver; that his operator's license was revoked in May, 1932, after his conviction for driving an automobile while he was intoxicated; that he then transferred the title to the Buick car to his mother and the title to the Ford car to his father; that in November, 1932, he procured a reissuance of his operator's license upon filing an insurance policy to afford indemnity for accidents which might result from his negligence in driving an automobile; and that he thereafter resumed the use of the Buick car and his habit of reckless driving,

which a few months later involved him in the final and fatal accident already described. The father testified that he made no effort to learn the circumstances of the accident in which his son was injured in 1929, and did not think he paid any money to the owner of the other car damaged in that collision; that he did not know until this suit was brought of his son's conviction in January, 1932, for reckless driving; and that he did not furnish the money for the purchase of the Buick car, and had no knowledge as to how the car was paid for, although he said, "I might have loaned him money." But admittedly both of the defendants knew of the revocation, in May, 1932, of their son's license to operate an automobile, and with that knowledge they apparently made no effort to exercise their parental right to ascertain and determine whether he could be safely intrusted with a renewal of that privilege. To be wholly indifferent to such a serious problem is hardly consistent with the responsibility involved in a parent's authority. The fact that his license was renewed, after the required insurance was provided, is not a sufficient ground for relieving the defendants of their duty to restrict their son in the use of the automobile to the extent to which such control might be necessary in the interest of his own and the public safety. The revocation of his license because of intoxication when driving an automobile was a fact which would naturally prompt an investigation by the defendants as to the habits of their son affecting his qualifications as the driver of a car. If such a course had been pursued, in the proper directions, the defendants would undoubtedly have learned the additional and regrettable facts, proved in this case, as to their son's recklessness in the operation of his car on the public highways. It is therefore inferable that the defendants, from the facts known to them, should have become apprised of the "unreasonable risk of bodily harm to himself and others" involved in their son's use of an automobile without restraint. As decided on the former appeal, the principle of the approved rule of liability applies not only to the owner of an automobile, but

also to any one who has the right to permit and the power to prohibit its use. The defendants certainly had that right and power with respect to the car which their minor son used with such unfortunate results. Upon the evidence in the record we have been unable to reach the conclusion that the case was properly withdrawn from the jury.

The fifteen exceptions at the trial to rulings on the admissibility of evidence disclose no reversible error. The testimony excluded as against exceptions 2A and 14 was, in our opinion, admissible, but was not of sufficient importance, in view of the admitted evidence, to require a reversal. A motion of the defendants, as shown by exception 13, to strike out certain testimony taken subject to exception, should have been wholly instead of partially granted; but to the extent to which the defendants' motion was denied, the plaintiff's exception is not applicable. All of the other evidence rulings were correct.

As we consider the evidence in the record legally sufficient to justify the submission of the case to a jury, we must reverse the judgment and award a new trial.

*Judgment reversed, with costs, and new trial awarded.*