539 A.2d 1145

**Brenda S. MORRIS, Individually, etc.**

v.

**William H. WEDDINGTON, Jr. et al.**

**No. 1074, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

April 11, 1988.

Certiorari Granted June 30, 1988.

652

Harvey S. Wasserman (Joel L. Katz, P.A., on the brief) Annapolis, for appellants.

William J. Rowan, III (Rowan, Abell & Quirk, on the brief) Rockville, for appellees.

Argued before WEANT, KARWACKI and WENNER, JJ.

KARWACKI, Judge.

On March 5, 1983, an automobile driven by appellee William H. Weddington, Jr., and owned by appellees Donald and Dorothy Ault struck four year old Keith T. Morris, severely fracturing his right leg. In a suit for damages brought in the Circuit Court for Prince George's County, Brenda S. Morris, individually and as mother and next friend of Keith Morris, appellant, alleged that Weddington's negligence in operating the vehicle caused the accident and that Mr. and Mrs. Ault had negligently entrusted their automobile to Weddington. Prior to trial, the court granted summary judgment in favor of the Aults. The jury returned a verdict in the amount of $7,033.45 in favor of Ms. Morris individually, and a verdict in the amount of $1,000.00 in favor of Ms. Morris as mother and next friend of her son, Keith. In this appeal from the summary judgments in favor of the Aults and the judgments entered against appellee Weddington on the jury's verdicts, appellant presents four questions.

    I.  Did the trial court err in granting summary judgment in favor of appellees Donald and Dorothy Ault?

    II.  Did the trial court err in refusing to grant a mistrial after the jury had been informed that appellee Weddington lacked automobile insurance?

III. Did the trial court abuse its discretion in not granting a new trial?

IV. Did the trial court err in refusing to propound appellant's requested voir dire?

## I. Negligent Entrustment

Our review of the summary judgments appealed from is limited to a determination of whether undisputed material facts set forth in the "pleadings, depositions, answers to interrogatories, admissions and affidavits" filed in the proceedings established that the appellees were not liable to the appellant. Rule 2–501; *Berkey v. Delia*, 287 Md. 302, 304–05, 413 A.2d 170 (1980); *Marcus v. Bathon*, 72 Md.App. 475, 479, 531 A.2d 690 (1987). Therefore, viewing the record before the hearing judge in a light most favorable to the party against whom the motion was made, we set forth the facts material to the issue of negligent entrustment in the instant case. *DiGrazia v. County Executive for Montgomery County*, 288 Md. 437, 445, 418 A.2d 1191 (1980); *Schlossberg v. Epstein*, 73 Md.App. 415, 423, 534 A.2d 1003 (1988); *DeGroft v. Lancaster Silo Co.*, 72 Md.App. 154, 160, 527 A.2d 1316 (1987).

On the morning of March 5, 1983, Weddington drove the Aults' van to the Morris residence, where he met with Anthony Schaefer, Ms. Morris's fiance at that time. The two men left in the van to transport a boat trailer from the Weddington residence to another location, accompanied by Ms. Morris's three children, including Keith. When they returned to the Morris residence later that morning, the three children exited the van through a side panel door. While Mr. Schaefer spoke briefly with Weddington through the side panel door, the children played in the immediate vicinity. Schaefer then closed the door and proceeded in the direction of the house. When Weddington started to pull away from the curb, he negligently ran over Keith, who was riding a toy cycle.

The van that Weddington drove on the day of the accident belonged to Donald and Dorothy Ault, the parents of Wed-

dington's wife, Donna. In deposition testimony, the Aults admitted that they knew of two instances in which Weddington had been cited for motor vehicle violations prior to the accident involving Keith Morris. Weddington told the Aults that the first violation was for "spinning the wheels" of his car after he left a bar where he had been shooting pool. In fact, Weddington had been arrested for, and later convicted of, driving while impaired by alcohol and exceeding the speed limit by 30 miles per hour. Donald Ault maintained that he did not know that Weddington had been convicted of driving while impaired by alcohol until the date of his deposition on January 15, 1986. Dorothy Ault testified that Weddington told her that he had, in fact, been arrested for driving under the influence of alcohol and that he was required to attend a remedial driving school, but she could not recall whether she learned this information before or after the accident on March 5, 1983.

The second of Weddington's motor vehicle violations of which the Aults admitted knowledge prior to March 1983 was for an illegal U-turn. In the two and one-half year period prior to the accident in March 1983, however, Weddington had in fact been convicted of speeding on three separate occasions in addition to the incident which led to his arrest for driving while impaired by alcohol and speeding. As a result of these convictions, Weddington received a restricted license which permitted him to drive only for employment purposes, and his automobile liability insurance policy was cancelled. The restrictions on his license were removed prior to the accident on March 5, 1983.

Donna Weddington was covered by her parents' automobile liability insurance policy prior to her marriage to William Weddington on July 18, 1981. Shortly after Donna married William Weddington, the Aults offered to include Mr. Weddington in the coverage of that policy. The Aults subsequently declined to include Mr. Weddington on their policy, however, after they learned that his coverage would make their premiums prohibitively expensive. Moreover, when the Aults renewed their insurance policy in January

of 1982, Mr. Ault executed a rider to their policy which provided:

### LIMITATION OF COVERAGE EXCLUSION

IT IS HEREBY UNDERSTOOD AND AGREED THAT SUCH INSURANCE AS IS AFFORDED BY THIS POLICY DOES NOT APPLY TO ANY AUTOMOBILE WHILE OPERATED BY <u>WILLIAM H. WEDDINGTON</u>.

Donna Weddington drove a 1979 Plymouth Horizon that was titled in her name and that of her father. The Aults knew that William Weddington occasionally used this vehicle and other vehicles owned by the Aults, including their van. The Aults loaned their van to the Weddingtons for the week preceding the March 5, 1983 accident because the Horizon needed repairs. The van was kept at the Weddington residence for that week. The Aults never told William Weddington that he could not use the van and never required that he ask permission to use it. Nevertheless, on March 4, 1983, Weddington telephoned Mr. Ault and asked him if he could use the van to transport some parts for a car that he was repairing. Mr. Ault gave him permission at that time.

Appellant contends that a genuine dispute as to the facts which were material to her negligent entrustment claim existed between the parties on the issue of whether the Aults knew or should have known that William Weddington was an unsafe driver at the time that the Aults loaned their van to the Weddingtons. Mrs. Ault asserts that summary judgment on appellant's negligent entrustment claim in her favor was appropriate because only Mr. Ault gave Weddington permission to use the van on March 5, 1983, and he was therefore the sole entrustor of the van. Mr. Ault maintains that he was entitled to summary judgment because his knowledge of Weddington's driving propensities was insufficient as a matter of law to establish his liability.

Maryland has adopted the concept of the tort of negligent entrustment as expressed by the American Law Institute in

Restatement (Second) of Torts, § 390 (1965). *Kahlenberg v. Goldstein,* 290 Md. 477, 485, 431 A.2d 76 (1981); *Herbert v. Whittle,* 69 Md.App. 273, 279, 517 A.2d 358 (1986), *cert. denied,* 309 Md. 49, 522 A.2d 393 (1987). Section 390 provides:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

▮▮▮▮ The basis of this tort liability is the knowledge of the supplier concerning the dangerous propensities of the entrustee and the foreseeability of harm. *Kahlenberg v. Goldstein, supra,* 290 Md. at 488, 431 A.2d 76. "If the supplier knows or should know of the entrustee's propensities to use the chattel in an improper or dangerous manner, the entrustor owes a duty to foreseeable parties to withhold the chattel from the entrustee." *Herbert v. Whittle, supra,* 69 Md.App. at 279, 517 A.2d 358. In assessing liability predicated on what the supplier should have known, if, under the circumstances of the case, further inquiry as to the entrustee's competence was appropriate and, despite such circumstances, the supplier failed to make a reasonable investigation, the supplier may be liable. *Rounds v. Phillips,* 168 Md. 120, 126, 177 A. 174 (1935); *Herbert v. Whittle, supra,* 69 Md.App. at 282, 517 A.2d 358.

▮▮▮ A supplier for purposes of the tort of negligent entrustment need not furnish the chattel to the entrustee in a direct transfer in order to be found liable. *Kahlenberg v. Goldstein, supra,* 290 Md. at 491, 431 A.2d 76. Instead, a supplier may be "anyone who has the right to permit and the power to prohibit the use of" the entrusted chattel. *Kahlenberg v. Goldstein, supra,* 290 Md. at 491, 431 A.2d 76; *Rounds v. Phillips,* 166 Md. 151, 168, 170 A. 532 (1934).

There is no litmus test to determine whether a supplier had the requisite knowledge of an entrustee's propensity to use the entrusted chattel in an improper or dangerous manner. For purposes of our review of the summary judgment entered against appellant, however, we note that the Court of Appeals has adopted a very restrictive rule concerning taking cases from the jury in negligence actions. *Campbell v. Montgomery County Bd. of Education*, 73 Md.App. 54, 62, 533 A.2d 9 (1987).

> ... Maryland has gone almost as far as any jurisdiction ... in holding that meager evidence of negligence is sufficient to carry the case to the jury. The rule has been stated as requiring submission if there be any evidence, however slight, *legally sufficient* as tending to prove negligence, and the weight and value of such evidence will be left to the jury. (Emphasis in the original.)

*Fowler v. Smith*, 240 Md. 240, 246, 213 A.2d 549 (1965). *See also Moodie v. Santoni*, 292 Md. 582, 587–88, 441 A.2d 323 (1982); *Curley v. General Valet Service, Inc.*, 270 Md. 248, 264, 311 A.2d 231 (1973). The test of legal sufficiency "is whether the evidence serves to prove a fact or permits an inference of fact that could enable an ordinarily intelligent mind to draw a rational conclusion therefrom in support of the right of the plaintiff to recover." *Curley v. General Valet Service, Inc., supra*, 270 Md. at 264, 311 A.2d 231, *quoting Stein v. Overlook Joint Venture*, 246 Md. 75, 81, 227 A.2d 226 (1966).

■ The evidence in the case *sub judice* and the permissible inferences therefrom would permit a jury rationally to conclude that both Donald and Dorothy Ault supplied their van to William Weddington. The Aults loaned their vehicles to Weddington on numerous occasions. When the Aults loaned their van to him and his wife for the week prior to the accident on March 5, 1983, they did not tell Weddington that he was forbidden from using the van and did not require that he ask permission to use it. Donald Ault told Weddington that he could use the van to perform

an errand on March 4, but nothing in the record indicates that Mr. Ault gave Weddington permission to use the van to transport the boat trailer on March 5, 1983. Even if it could be shown that Donald Ault gave Weddington specific permission to use the van on the date of the accident, Dorothy Ault could still be considered a supplier of the van, because she knew of Weddington's access to the vehicle and did not exercise her "power to prohibit the use of" the vehicle. *See Snowhite v. State, Use of Tennant,* 243 Md. 291, 315, 221 A.2d 342 (1966) (entrustee justified in regarding himself free to use vehicle for his own purposes with knowledge and acquiescence of entrustor in view of entire background and conduct of the parties).

We also conclude that a jury question was presented by the evidence before the hearing court as to whether the Aults had knowledge of the dangerous propensities of Weddington in operating an automobile and the foreseeability of harm to others. Although the Aults claimed that they knew of only two instances when William Weddington had committed motor vehicle violations prior to the time that they supplied their van to him—one which involved "spinning wheels" and another which involved an illegal U-turn—there was conflicting evidence on what they knew or should have known. Prior to entrusting the van to Weddington, they knew that the premium for their automobile liability policy would become prohibitively expensive if Weddington was included under its coverage. Also, the Aults, prior to entrusting the van to Weddington, knew that they had executed a rider to their automobile liability policy which specifically excluded Weddington from coverage. Moreover, Dorothy Ault stated that, sometime after Weddington's arrest for "spinning wheels", she learned that he had in fact been charged with an alcohol-related offense and required to attend a remedial driving school. She could not recall whether she learned this before or after the Aults entrusted their van to Weddington prior to the March 5, 1983 accident. We hold that a jury could properly infer from these circumstances that the Aults knew the true

extent of Weddington's driving record. Alternatively, the jury might conclude that the Aults breached a duty to make further inquiry into Weddington's driving record under these circumstances to determine his dangerous propensities in operating a motor vehicle.

## II. Reference to Lack of Insurance

Anthony Schaefer was called as a witness by appellant. The following exchange occurred in the course of the cross-examination of Mr. Schaefer.

Q You testified that before this incident you were friendly with Ted Weddington.

A Yes.

Q Now, isn't it true that after this incident you weren't as friendly anymore with each other, is that correct?

A At the very beginning of the accident we were still good friends. We both rode to the hospital.

Q I understand that. And obviously both of you were concerned about this child, is that right?

A Definitely.

Q But after that, you were no longer friendly, is that correct?

A Yes. I believe—

Q You can answer it yes or no.

THE COURT: On television they make you answer yes or no. Just go ahead and answer it, please.

A Yes. The whole thing got nasty. I was told that he didn't have insurance, and he wasn't allowed to drive the van. Oops. Was I supposed to say that?

THE COURT: Go ahead and ask him another question.

The trial court denied appellant's motion for a mistrial. The appellant did not move to strike the reference to Mr. Weddington's lack of automobile insurance. After the court entered the judgment in favor of appellant on the jury's verdict, appellant moved for a new trial pursuant to Rule 2–533, alleging that the inadequate verdicts were influenced by Mr. Schaefer's comments revealing Weddington's lack of

insurance. Judge Levin denied appellant's motion. Appellant now contends that the court erred on both occasions. We disagree.

■ Evidence that a party is or is not insured against liability is generally not admissible to prove negligence. *Snowhite v. State, Use of Tennant, supra,* 243 Md. at 301, 221 A.2d 342; *Eastern Contractors, Inc. v. State, Use of Seifert,* 225 Md. 112, 126, 169 A.2d 430 (1961); McCormick, *Evidence,* (3rd Ed. 1984) § 201. When a witness makes an unexpected or irresponsive reference to such insurance, the reference will be stricken on request, but it is usually not a ground for mistrial or reversal. *Snowhite v. State, Use of Tennant, supra,* 243 Md. at 301–02 n. 1, 221 A.2d 342 [quoting *McCormick on Evidence* (1954) § 168]; *York Ice Machinery Corp. v. Sachs,* 167 Md. 113, 127, 173 A. 240 (1934); McLain, *Maryland Evidence,* § 411.1.

■ We think it highly unlikely that appellants were prejudiced by Mr. Schaefer's remarks because we presume that the jurors were aware that the Maryland Automobile Insurance Fund [1] is a source of recovery for persons injured by uninsured motor vehicle operators in this State. McLain, *supra,* § 411.1 at p. 447. *Cf. Yellow Cab Co. v. Bradin,* 172 Md. 388, 397, 191 A. 717 (1937) (admission of proof of insurance of a taxi harmless error because of jury's presumptive knowledge of the legal requirement of public liability insurance for taxicab companies). Because Mr. Schaefer's reference to the fact that appellee Weddington had no automobile liability insurance came in the form of an inadvertent blurt for which appellants did not request a curative instruction, we hold that the court did not abuse its discretion when it denied appellant's motion for a mistrial and motion for a new trial.

### III.  Voir Dire

■ Appellant submitted to the trial court several voir dire questions that were "aimed at detecting if any potential

---

1.  Md. Code (1986 Repl. Vol.), Article 48A, § 243 *et. seq.*

members of the jury would be reluctant, or have a bias against, returning a substantial verdict for appellants if the evidence so warranted." Appellant contends that the trial court erred when it refused to propound these questions. We disagree.

The scope of questions propounded to prospective jurors rests within the sound discretion of the trial court. *Jones v. Federal Paper Board Co., Inc.,* 252 Md. 475, 494, 250 A.2d 653 (1969); *Kelch v. Mass Transit Administration,* 42 Md.App. 291, 294, 400 A.2d 440, *affirmed,* 287 Md. 223, 411 A.2d 449 (1979). In *Kujawa v. Baltimore Transit Co.,* 224 Md. 195, 201, 167 A.2d 96 (1961), the Court of Appeals considered a trial court's refusal to propound a question to the prospective jurors intended to ascertain the existence of bias or prejudice with respect to the size of jury verdicts. The Court observed:

> Even if a juror had formed or expressed an opinion as to the adequacies or inadequacies of jury verdicts in negligence cases, that fact would not have disqualified him. A juror to be competent need not be devoid of all beliefs and convictions. All that may be required of him is that he shall be without bias or prejudice for or against the parties to the cause and possess an open mind to the end that he may hear and consider the evidence produced and render a fair and impartial verdict thereon.

Adopting that reasoning, we hold that the trial court did not abuse its discretion when it refused to propound appellant's proposed voir dire questions.

JUDGMENT AGAINST APPELLEE WEDDINGTON AFFIRMED; JUDGMENTS IN FAVOR OF APPELLEES DONALD AND DOROTHY AULT VACATED AND CASE REMANDED FOR FURTHER PROCEEDINGS;

COSTS TO BE DIVIDED; ONE–HALF TO BE PAID BY APPELLANT AND ONE–HALF BY APPELLEES DONALD AULT AND DOROTHY AULT.