U-HAUL CO. *v.* HARRY T. RUTHERFORD ET UX.

[No. 225, September Term, 1970.]

*Decided November 10, 1970.*

374

The cause was argued before MURPHY, C.J., and ORTH, MOYLAN and POWERS, JJ.

*Frank J. Vecella* for appellant.

*John D. Alexander, Sr.* and *David D. Daneker* for appellees.

ORTH, J., delivered the opinion of the Court.

### THE DOCTRINE OF NEGLIGENT ENTRUSTMENT

The Court of Appeals has adopted and applied the doctrine of negligent entrustment as stated in 2 Restatement, Second, Torts, § 390. *Snowhite v. State, Use of Tennant,* 243 Md. 291, 311; *Rounds v. Phillips,* 166 Md. 151. It reads:

> "One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them."

Under this statement of the doctrine the entruster is subject to liability for physical harm resulting to the entrustee and to third persons when it is established that:

1) the entruster supplied the chattel for the use of the entrustee; and

2) that the entruster knew or had reason to know:

   a) that the entrustee because of:

      i) his youth; or

      ii) his inexperience; or

      iii) otherwise

   would be likely to use the chattel in a manner involving unreasonable risk of physical harm;

   b) that such harm would be to:

      i) the entrustee, or

      ii) other persons whom the entruster should expect to share in or be endangered by the use of the chattel.

The doctrine is an out-growth of the rule that a vendor who sold an inherently dangerous instrumentality was liable to third persons for injuries sustained upon the principle that such instrumentality was placed in such position that injury might be inflicted, and that without notice or warning to the vendee in respect to the dangerous qualities. See *State v. Katcef*, 159 Md. 271; *State v. Fox*, 79 Md. 514. A motor vehicle is a chattel within the doctrine; although it is not an inherently dangerous instrumentality, it is an instrument which is potentially dangerous. *Rounds v. Phillips, supra,* at 162. Thus it is susceptible of being used in a manner involving unreasonable risk of physical harm. So the doctrine provides an exception to the general rule that the owner of an automobile is not responsible for the negligent use of it except upon the theory of *respondeat superior*.

*The Instant Case*

U-Haul Co., appellant, appeals from a judgment of $15,-

000 entered in favor of Harry T. Rutherford and a judgment of $1000 entered in favor of Rutherford and Florence V. Rutherford, his wife, appellees and plaintiffs below, against it and Walter H. Gough, each a defendant below, by the Superior Court of Baltimore City upon a verdict of a jury in an action by Rutherford to recover for personal injuries and by him and his wife to recover for loss of consortium, resulting from an automobile accident.

The action was initiated by the filing of a declaration by appellees against appellant, Charles J. Jefferson and Shirley J. Jefferson, his wife, William Thomas Gowran, and Walter H. Gough. The first count was as to the claim of Rutherford and the second count as to the claim of him and his wife. The claims were based on alleged negligent operation of motor vehicles by the defendants. Subsequently the declaration was amended to add two counts as the third and fourth counts. The added counts claimed in the alternative damages under the doctrine of negligent entrustment, the third count alleging that appellant negligently entrusted a motor vehicle to Gough and the fourth count alleging that Gowran so entrusted the vehicle to Gough.[1]

*The Evidence*

There was evidence from which the jury could properly find that about 10:30 A.M. on 16 September 1967 there was an accident on the Baltimore National Pike at Ingleside Avenue involving three motor vehicles. An automobile operated by Mr. Rutherford was stopped facing west at a traffic light in the northernmost lane of the Baltimore National Pike at Ingleside Avenue. Stopped behind it was an automobile operated by Shirley J. Jefferson. A two-ton truck collided with the rear of the Jefferson automobile, ramming it into the rear of the Ruther-

---

1. Upon motion of appellees in open court the case as to Charles J. Jefferson was dismissed with prejudice. The trial court directed a verdict in favor of Gowran, and in part as to U-Haul on the issue of agency. The jury returned a verdict in favor of Shirley J. Jefferson.

ford automobile. The Jefferson automobile bounced back off the Rutherford automobile and was struck a second time by the truck. Again the Jefferson automobile was rammed into the Rutherford automobile. The force of the two impacts broke the seat latch of the Rutherford vehicle, jammed all four doors, bent the frame and drove it 28 feet into the intersection. The Jefferson vehicle was also extensively damaged. There was little damage to the truck and that to the front bumper. It is not disputed that the accident was caused by the negligence of the driver of the truck without any contributory negligence on the part of the drivers of the other two vehicles.

At the scene the driver of the truck showed a police officer investigating the accident a chauffeur's license in the name of William Thomas Gowran and a card identifying Gowran as a maintenance man employed by the City of Baltimore. The officer issued a traffic summons in the name of Gowran and the driver of the truck signed it "William T. Gowran." It later developed that the driver of the truck was not William Thomas Gowran but Walter H. Gough and that he had rented the truck that morning from U-Haul. Called by appellees at the trial as an adverse witness,[2] he explained that he had found Gowran's license in a bar. "I went to the toilet. I seen this folder laying on the ground in the toilet there. So I picked it up and put it in my pocket. I went back to the bar not knowing at the time it belonged to Mr. Gowran. So I went home to my room. I wasn't living with my wife at the time. Went home to my room, I opened it up and I seen the chauffeur's license." The next day his wife said she was going to move and he suggested he rent a truck to move her furniture. He looked in the telephone book "for a truck that size. So in the book it stated [a U-Haul branch in the Edmondson Village area] has a truck that size for moving. So I went out there [from East Baltimore.] * * * I just walked in to the office. * * * I just took the license out of my pocket and put it on the desk.

---

2. See Code, Art. 35, § 9; *Williams v. Wheeler.* 252 Md. 75; *Vokroy v. Johnson*, 233 Md. 269.

I said, 'I want to rent that truck there, that two-ton truck.' I said I wanted to haul three rooms of furniture, one way to Cumberland. * * * He said okay." The clerk "made up a contract" and Gough signed it in the name of William T. Gowran.[3]

The U-Haul rental contract received in evidence consisted of three sheets. On the third was printed the terms of the rental agreement and the cargo insurance conditions. The upper part of the second sheet appeared to be a carbon copy of the upper part of the first sheet. It included the name of the customer, in this case William T. Gowran, and his address and the number of his chauffeur's license. At the end of the upper portion was the signature "William T. Gowran." The bottom portion of the second sheet contained information apparently completed when the truck reached its destination and was returned to U-Haul. It showed amounts credited against the deposit made and required the customer's signature when a refund was received. It bore the signature "William T. Gowran."

Gough testified that at the time he rented the truck he did not have a chauffeur's or operator's license to operate a motor vehicle. He had not had such a license since 1953. He said he had driven once between 1956 and 16 September 1967. He was asked if he was convicted on 26 February 1956 in the Criminal Court of Baltimore for auto larceny, false name or registration of title, making false affidavit and displaying fictitious license. He admitted he had been convicted "about false application."

Gowran's license was not produced at the trial. Gowran said it was never returned to him and what Gough did with it after the accident is not disclosed in the record. Nor was the U-Haul representative who rented the truck to Gough called as a witness.

---

3. He was shown the contract by counsel for appellees and asked whose signature was on the contract. He said, "Well, as far as I know the signature looks like mine but the writing is not mine." On further inquiry he said, "It could be and it couldn't be" and when pressed, he said, "Well actually I would say yes it's mine."

*Application of the Doctrine of Negligent Entrustment*

The verdict against U-Haul was based on the third count of the declaration alleging negligent entrustment, the court having directed a verdict in favor of U-Haul as to *respondeat superior*. The count declared that U-Haul negligently intrusted its truck to Gough, "* * * in that it failed to adequately inspect the chauffeur's license of Defendant Gowran which Defendant Gough presented to it at the time he leased the truck, failed to compare the signature on the license with the signature Defendant Gough had written, or should have been required to write, in the presence of Defendant U-Haul's agents or employees, and to compare the physical description on the license with the Defendant Gough, and thereby permitted Defendant Gough, an unlicensed person, to operate the truck when Defendant U-Haul, its agents or employees, knew or by the exercise of ordinary care should have known that Defendant Gough was incompetent to do so and was without a license to operate the same, * * *."

The evidence was undisputed that U-Haul supplied the truck to Gough by renting it to him. And it was legally sufficient to show that U-Haul had reason to know, because its truck was to be operated on the highways, that anyone driving on the highways would be endangered by the use of the truck. Since Rutherford was proved to be a driver of an automobile on the highways, U-Haul should have expected him to be endangered by the use of the truck. The question is whether the evidence was legally sufficient to show that U-Haul knew or had reason to know that Gough would be likely to use the truck in a manner involving unreasonable risk of physical harm.

The question is before us on the denial by the trial court of U-Haul's motion for a directed verdict. Maryland Rule 552. In determining whether U-Haul's motion for a directed verdict was properly denied, we must consider the evidence in a light most favorable to the Rutherfords, resolving all conflicts in their favor and assuming the truth of all the inferences which may be naturally and legitimately drawn from such evidence. Such a motion should

not be granted if there is any legally relevant and competent evidence from which a rational mind can infer a fact at issue. *Yommer v. McKenzie,* 255 Md. 220, 228. But "it is fundamental that in a negligence action the plaintiff has the burden of proving all the facts essential to constitute the cause of action." *Peterson v. Underwood,* 258 Md. 9, 15.

Under the doctrine as stated appellees had to show that U-Haul knew or had reason to know when it rented the truck to Gough that Gough, because of his youth, his inexperience, or otherwise, would be likely to use it in a manner involving unreasonable risk of physical harm. Appellees claim they met this burden by establishing that U-Haul violated the law in renting the truck to Gough. U-Haul, on the other hand, contends that the evidence was not sufficient to prove that it violated the law. The law in point is codified as Code, Art. 66½, § 114. Both U-Haul and the Rutherfords seem to proceed on the assumption that if it was in fact violated, U-Haul was negligent in supplying the truck to Gough. We have no need to decide whether an entruster would know or have cause to know that the entrustee would be likely to use a motor vehicle in a manner involving an unreasonable risk of physical harm merely because the rental of it was in violation of § 114 as we find here that the evidence was insufficient in law to prove that the statute was violated.

Art. 66½, § 114 is a criminal statute. It creates offenses which it classifies as misdemeanors and provides for fine and imprisonment upon conviction of them. It prohibits any person renting a motor vehicle to any other person for operation unless the person who will operate it is "then duly licensed," § 114(a). While it does not prescribe that the renter "knowingly" rent to a person not then duly licensed to constitute an offense,[4] it imposes a

---

4. Unlike § 113 which provides: "No person shall authorize or knowingly permit a motor vehicle owned by him or under his control to be driven upon any highway of this State by any person who is not authorized to operate such motor vehicle under this article." Violation of § 113 is also deemed a misdemeanor. It is punishable by a fine of not more than $500.

duty on the renter by subsection (b) to inspect the operator's or chauffeur's license of the person by whom the motor vehicle is to be operated and to compare and verify the signature thereon with the signature of such person written in the renter's presence.[5] Subsection (c) requires that designated records of the transaction be made including the number of the operator's license of the person who is to operate the rented vehicle and the date and when and where said license was issued.[6] U-Haul urges that subsection (a) and subsection (b) must be read together so that if, in fact, the lessee is not duly licensed when the motor vehicle is rented to him, the renter is not liable if he inspects a license presented to him as that of the prospective operator and compares and verifies signatures as required. Appellees do not argue that subsection (a) stands alone and is violated if the prospective operator is not in fact duly licensed, regardless of whether or not the renter complied with subsection (b) as to a license shown him as the license of such operator. And it is patent that the basis of the action as set out in the third count of their declaration is that U-Haul did not comply with the provisions of subsection (b). In any event, in the light of the provisions of subsection (b) as originally enacted and as recently amended, we do not find it to have been the legislative intent that a renter will have committed a crime on proof only that he rented a motor vehicle to be operated by a person not then duly licensed without regard to subsection (b). We construe subsection (b) to be a proviso to subsection (a) so that subsection (a) is not violated if it appears that the renter inspected a license tendered him as that of the prospective operator and compared and verified the signature thereon with the signature of the prospective operator

---

5. Chapter 638, Acts 1968, effective 1 July 1968, and thus not applicable to this case, amended § 114 to include trailers and added in subsection (b) the duty of the renter to compare and verify the physical description on the license with the physical description of the person presenting it as his license.

6. Neither § 113 or 114 impose any civil liability. There is no statute in this jurisdiction imposing civil liability with respect to negligent entrustment.

written in his presence and, since 1 July 1968, compared and verified the physical description on the license with that of the person tendering it. It may be that in a criminal prosecution for violation of § 114 the State need only establish that the motor vehicle was rented for operation by a person not then duly licensed. If the defense of the accused was that he complied with subsection (b) then the burden of the evidence (as distinguished from the burden of proof which always is on the State) would shift to him and he would have to show that he inspected a license presented to him and that a reasonable man would have believed it authentic; that he compared the signature on the license with the signature of the prospective operator written in his presence and that a reasonable man would have believed them scribed by the same hand; and, since 1 July 1968 that he compared the physical description on the license with the physical description of the prospective operator and that a reasonable man would have believed the license was issued to the person presenting it. In a civil negligence action, however, the plaintiff has the burden of proving all the facts essential to constitute the cause of action. The cause of action against U-Haul being that it was negligent in entrusting the truck to Gough because it violated § 114 it was appellees' burden to prove the violation. The evidence produced by it was that Gough presented a chauffeur's license to U-Haul. The name and address of the licensee as it appeared on the license and the number of the license, apparently as it appeared on the license, was used by U-Haul in completing the rental contract. Gough, in the presence of U-Haul, signed the name of the licensee on the contract. There is no evidence sufficient to establish that U-Haul knew that Gough was not the licensee or that the license tendered was not an authentic one duly issued by the Department of Motor Vehicles. There was no evidence that U-Haul did not "inspect" the license and we think it a rational inference from the evidence presented that it did inspect it within the meaning of the statute. There was no evidence that the signature on the license was not com-

pared and verified with the signature written by Gough on the contract. There was no evidence bearing on the issue of what a comparison of the signatures would show —the license was not produced nor was a signature of Gowran offered. And although a comparison and verification of the physical description on the license with that of the person tendering it was not specifically required at the time of the rental, had the appearance of Gowran and Gough been disparate, it may have been of probative value in showing whether or not U-Haul inspected the license. But all the record shows on the point is that Gough testified he was 5 feet 7 inches tall and weighed 175 or 180 pounds, was clean shaven and had brown hair. Gowran testified that he weighed 189 pounds, was 5 feet 11 inches tall and was 57 years old. It is not a rational inference from this evidence that U-Haul did not inspect the license.[7] The Rutherfords read into evidence certain of the interrogatories directed by them to U-Haul. No. 6 was: "State whether you owned, operated and/or leased the motor vehicle involving you in this occurrence, giving its year, make, model, and if leased, state when, where, to whom and the terms and conditions of the lease, and attach a copy of the lease to your answer." The answer was: "Defendant owns the truck, which was a 1965 Ford U-Haul truck, leased to a person who presumably presented himself as William T. Gowran on September 16, 1967. This defendant does not know from whom it was leased other than from a garage near the Edmondson Village area of Baltimore. The leasing arrangements were not made directly with this defendant. A copy of the lease is attached and it contains the terms and conditions." No. 8 read: "Before leasing the motor vehicle, what identification did you require of the lessee?" The answer was "Unknown. See number 6." This evidence obviously did not show directly or by rational inference that U-Haul violated § 114.

---

7. Appellant states in his brief that Gough and Gowran were both white and approximately the same age. This may have been apparent on viewing them at trial but it is not shown in the record agreed upon.

Considering the evidence in the light most favorable to the Rutherfords, resolving all conflicts in their favor and assuming the truth of all the inferences which may be naturally and legitimately drawn from such evidence, we conclude that there was no legally relevant and competent evidence from which a rational mind could infer that U-Haul did not inspect the license presented to it by Gough and did not compare and verify the signature thereon with the signature "William T. Gowran" written in its presence by Gough on the rental contract. Therefore it was not established that U-Haul violated § 114 as declared and it was error requiring reversal to deny the motion for a directed verdict made on the ground that the evidence was insufficient to show the violation.

The judgment against appellant is reversed without grant of a new trial. Appellees are not entitled to a remand for the purpose of supplying proof, if they could, of a violation of § 114 by appellant. *A. S Abell Co. v. Barnes,* 258 Md. 56, 80-81. In view of our holding we do not consider the question of the liability of U-Haul to the Rutherfords had it been proved to have violated § 114. But see A.L.R.2d 978—-1001, *Anno: Automobiles— Unlicensed Operator;* 6 Blashfield, *Automobile Law and Practice* (Lewis), §§ 254.12—254.14.

*Judgment against U-Haul, Co. reversed without grant of a new trial; costs to be paid by appellees.*