868 A.2d 954

**Mattie MOORE, as Parent and Next Friend
of Monica Graham, a Minor**

v.

**Jeanne MYERS, et al.**

**No. 2519, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

Feb. 25, 2005.

350

352

358

Kevin Finnegan (Thomas W. Farrington, on the briefs), Silver Spring, for Appellant.

Sheila F. Fleshman, Upper Marlboro and Noel Patterson, Greenbelt, for Appellee.

Panel: ADKINS, KRAUSER, and RAYMOND G. THIEME, JR. (Retired, Specially Assigned), JJ.

KRAUSER, Judge.

Twelve-year-old Monica Graham was struck by a car in Prince George's County while fleeing a neighbor's advancing pit bull. The dog was, at that time, both unleashed and unconfined, in violation of Prince George's County law.[1]

Seeking damages for her daughter's injuries, Monica's mother, appellant Mattie Moore, brought a negligence action on behalf of herself and her daughter, in the Circuit Court for Prince George's County, against the driver of the car, Mia Flatricia Young; the owner of the dog, Michael Myers; his wife, Jeanne Griffin Myers; and her fifteen year-old son,

---

1. Prince George's County, Md., Code § 3–185.01 (1996).

Jaton Griffin.[2]   Jaton, appellant alleged, played a pivotal role in this matter:  He was with the dog at the time of the accident and had, according to appellant, prompted the dog's pursuit of Monica, setting in motion the terrible events of that day.

In her amended six-count complaint, appellant alleged, among other things, that the accident had resulted from the individual negligence of Ms. Young, Jaton, and Mr. and Mrs. Myers and from the Myerses' negligent entrustment of Mr. Myers's pit bull to Jaton.   After granting successive motions for judgment, the first at the conclusion of appellant's case and the second at the conclusion of the defense, the court permitted the case to go to the jury on a single count, accusing the driver of the striking vehicle, Ms. Young, of negligence. When the jury returned a verdict in favor of Ms. Young, appellant noted this appeal, but solely on behalf of Monica,[3] claiming only that the court had erred in dismissing the negligence and negligent entrustment counts against appellees.

## TRIAL

To facilitate our analysis of the issues presented, we shall divide our review of what happened at trial into two segments: appellant's case and appellees' defense.   That will permit us to highlight the evidence adduced by each side and the rulings made by the court at the conclusion of each segment.

---

**2.**   Also named in the suit as a defendant was J & M Childcare (Count V), "a business," the complaint says, "was owned and operated by Mr. and Ms. Myers" at their home.   But J & M Childcare was dismissed as a defendant before trial and is not a party to this appeal.

**3.**   On its own initiative, the trial court dismissed appellant as an individual plaintiff but permitted her to proceed in a representative capacity, as parent and next friend of her daughter, Monica.   After pointing out that no one had testified that appellant was obligated to pay Monica's medical bills, the court concluded that no evidence had been presented that Ms. Moore suffered any financial loss as a result of Monica's accident.

### Appellant's Case

Although Monica, her treating physician, and both her parents testified, the case for liability, which is the only aspect of this matter before us, rested entirely on Monica's testimony and the portions of the deposition testimony and answers to interrogatories of Michael Myers and of Mia Young that were read into the record. We shall not, therefore, recount the testimony of Monica's parents or her physician, which focused principally on the injuries that Monica sustained and the ensuing medical treatment she received, except to note that this accident left Monica with two broken arms, a broken leg, and a fractured jaw.

#### A. Monica's Testimony

Monica testified that on July 18, 1999, she and three friends were walking along Columbia Park Road, not far from her residence. As the girls approached the Myerses' home, at 7104 Columbia Park Road, Monica saw Jaton and two other boys, Heath and Nathaniel, "standing by the steps [of the house] with a dog." Monica knew all three boys either from school or from the neighborhood.

The dog was a pit bull. It was unleashed and standing between Jaton and Heath, in an unenclosed front yard. In front of the Myerses' house, Jaton and one of Monica's friends, Showna, got into an argument. At that point, Jaton threatened to "sic his dog on" the girls. When he purportedly "said something to the dog to make the dog ... aggressive," the dog barked at the girls and started towards Monica, "like it was coming after" her. As it approached, Monica "got scared," turned and ran into the path of Ms. Young's oncoming car.

#### B. Michael Myers's Deposition Testimony

Appellant read portions of Mr. Myers's deposition testimony into the record. Myers deponed that he owned the pit bull. He insisted, however, that the dog had never bitten anyone, except during personal protection training when the dog bit a

protective sleeve. He also stated that he regularly allowed Jaton to play with the pit bull in front of his house, and did not require Jaton to put the dog on a leash.

On his way home on the date of the accident, he saw a group of girls walking along Columbia Park Road, headed in the direction of his house. He stated that, when he got home, "[he] walked past Jaton," who was "by the steps with the dog." As he entered his house, he heard the slamming of car brakes.

### C.  *Mia Young's Deposition Testimony*

Excerpts from the deposition of Mia Young were read into the record. The excepts disclosed that, as Ms. Young drove down Columbia Park Road towards the Myerses' house, she observed three girls running in the street, with a dog in pursuit. She noted that the dog wore a leash, that it "was behind the children," and that it looked like it was chasing them.

### D.  *Court's Ruling*

At the conclusion of appellant's case, the circuit court granted judgment in favor of Mrs. Myers and Jaton as to all counts and granted judgment in favor of Mr. Myers as to all counts, except Count I.

### Appellees' Defense

The defense presented only two witnesses: Mia Young, the driver of the vehicle that struck Monica, and Officer James Stanley of the Prince George's County Police Department. For his convenience, Officer Stanley was permitted to testify during the presentation of appellant's case, even though he was called by the defense. The officer testified that when he arrived at the scene of Monica's accident, he was not told by anyone that a dog had been involved in the accident. Nor did he recall animal control being called in response to this accident.

Ms. Young testified that she only saw Monica for a second, before she struck Monica with her car. She confirmed that

she saw three girls running in the street, chased by a pit bull wearing a leash.

At the conclusion of Ms. Young's testimony, the court granted judgment in favor of Mr. Myers as to Count I, submitting only the question of Ms. Young's negligence to the jury. A verdict in favor of Ms. Young followed.

## STANDARD OF REVIEW

"A party may move for judgment on any or all of the issues in any action at the close of the evidence offered by an opposing party, and in a jury trial at the close of all the evidence." Md. Rule 2–519(a). In deciding such a motion during a jury trial, "the court shall consider all evidence and inferences in the light most favorable to the party against whom the motion is made." *See* Md. Rule 2–519(b). On appeal, when "reviewing the propriety of the grant or denial of a motion for judgment by a trial judge [we] must conduct the same analysis." *Azar v. Adams,* 117 Md.App. 426, 435, 700 A.2d 821 (1997) (citation omitted). Consequently, "[w]e assume the truth of all credible evidence on the issue, and all fairly deducible inferences therefrom, in the light most favorable to the party against whom the motion is made." *Tate v. The Board of Education of Prince George's County,* 155 Md.App. 536, 544, 843 A.2d 890 (2004) (citation omitted). Therefore, "if there is any evidence, no matter how slight, that is legally sufficient to generate a jury question, the case must be submitted to the jury for its consideration." *Id.* at 545, 843 A.2d 890.

## DISCUSSION

### I.

■ Appellant contends that the circuit court erred in granting Mr. Myers's motion for judgment as to Count I of the complaint. That count alleged that Mr. Myers was negligent in "fail[ing] to contain, control, and warn about [his] pit bull dog so as to not cause injury to others" in violation of a

Prince George's County law. The county ordinance, upon which appellant relies, required that a pit bull be "maintained within a building or a secure kennel at all times" and if "removed from the building or kennel," to "be secured by . . . a leash and maintained under the control of an adult." Mr. Myers's violation of that law, according to appellant, was a proximate cause of Monica's injuries.

Our analysis begins with the observation that "Maryland has adopted a very restrictive rule about granting [motions for judgment] in negligence actions." *Banks v. Iron Hustler Corp.,* 59 Md.App. 408, 423, 475 A.2d 1243 (1984). Indeed, it "has gone almost as far as any jurisdiction that we know of in holding that meager evidence of negligence is sufficient to carry the case to the jury." *Id.* (quoting *Fowler v. Smith,* 240 Md. 240, 246, 213 A.2d 549 (1965)). "The rule has been stated as requiring submission if there be any evidence, however slight, legally sufficient as tending to prove negligence, and the weight and value of such evidence will be left to the jury." *Id.* (emphasis omitted).

To prevail in a typical negligence action, one must show "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Horridge v. Saint Mary's County Department of Social Services,* 382 Md. 170, 182, 854 A.2d 1232 (2004). But, "where there is an applicable statutory scheme designed to protect a class of persons which includes the plaintiff, . . . the defendant's duty ordinarily 'is prescribed by the statute' or ordinance and that the violation of the statute or ordinance is itself evidence of negligence." *Brooks v. Lewin Realty III, Inc.,* 378 Md. 70, 78, 835 A.2d 616 (2003) (citations omitted). In that situation, "all that a plaintiff must show is: (a) the violation of a statute or ordinance designed to protect a specific class of persons which includes the plaintiff, and (b) that the violation proximately caused the injury complained of." *Id.* at 79, 835 A.2d 616.

The Prince George's County law, which appellant maintains Mr. Myers violated, provides that

[a]ny person owning a Pit Bull Terrier prior to November 1, 1996, may continue to harbor the animal on his premises under the following conditions:

. . . .

(3) The owner shall maintain the dog within a building or a secure kennel at all times. Whenever the dog is removed from the building or kennel it shall be secured by an unbreakable or unseverable leash and maintained under the control of an adult.

Prince George's County, Md., Code § 3–185.01 (1996).

Viewing the evidence in a light most favorable to appellant, we find that there was sufficient evidence establishing a violation of that law by Mr. Myers. Myers admitted in his deposition testimony that he owned the pit bull in question; that he allowed Jaton to take the dog outside without a leash; that, minutes before Monica was struck by a car, he saw Jaton in the yard with the pit bull; and that he walked past Jaton without attempting to exercise any control over the dog.

Although Mr. Myers never testified whether the dog was, at that time, on a leash, Monica did. She stated that the dog was not on a leash as it pursued her. Thus, at the time of the accident, by all accounts, the pit bull was not under the control of an adult, and, according to Monica's testimony, it was not on a leash either, in violation of county law. And that was what the circuit court, in effect, found. It stated, without elaborating: "I believe that I can take judicial notice of this, the violation of the local ordinance, if you will, regarding the pit bull."

After finding that Mr. Myers had violated county law, the circuit court turned to the question of whether Monica's injuries were proximately caused by the violation. In concluding that they were not, the court stated:

Harkening back to the statute, one reads and emphasizes the language that it, meaning the dog, shall be secured by an unbreakable or unseverable leash and maintained under

the control of an adult. There is no indication as to what Mr. Myers' reaction was with his minor son. There is no indication as to what his minor son was doing. But most significantly is the Court's recollection, and I certainly may be wrong here, as to what [Monica] testified to. She said the dog looked at me, I got scared, the dog was barking, there was no leash on the dog, which seems to be contradicted, but then she said I ran. She got to the car, she was hit by the car. It is unequivocal that that's what she testified to. The point that I make in emphasizing that testimony, and I took the liberty to review my notes again last evening, was that there is no evidence that the dog barking was the proximate cause or a proximate cause, and there certainly can be more than one cause of an accident, of this accident.

In so holding, the circuit court failed to view the evidence in the light most favorable to appellant, as it was required to do. Proximate cause, the Court of Appeals has declared, in the context of a statutory violation, "is established by determining whether the plaintiff is within the class of persons sought to be protected [by the statute], and the harm suffered is of a kind which the drafters intended the statute to prevent." *Brooks*, 378 Md. at 79, 835 A.2d 616. "[T]his cause and effect relationship," the Court avowed, "makes the violation of a statute *prima facie* evidence of negligence." *Id.* And, "[w]here there is evidence that the violation of the statute proximately caused the plaintiff's injury, evidence of such violation 'is sufficient evidence to warrant the court in submitting the case to the jury on the question of the [defendant's] negligence.'" *Id.* (citation omitted).

"Animal control statutes are designed to protect the public against the hazards of personal injury or property damage caused by roaming animals...." *Hammond v. Robins*, 60 Md.App. 430, 435–36, 483 A.2d 379 (1984). As a member of the public, Monica fell within the protected class. Injuries suffered as a result of fleeing an approaching pit bull that is both unconfined and unleashed, in violation of county

law, are the kind of injuries that the ordinance was meant to prevent.

Insisting, nonetheless, that the circuit court was correct in granting judgment in his favor as to Count I, Mr. Myers maintains that this "case leaves open too many possibilities to lend itself to any easy inferences as to what may have happened." He directs our attention to the testimony of the policeman who investigated the accident, Officer James Stanley. Officer Stanley testified that, in investigating the accident, "there was no indication of any involvement of a pit bull and neither animal control nor any related agency was called to investigate any violation of the City Ordinance." As "a police officer has a sworn duty to investigate violations of the law," Myers suggests that "the lack of an investigation demonstrates a lack of any evidence of a violation."

■■ But that argument obscures more than it enlightens. "[T]he credibility of the witnesses and the weight to be given the evidence on each side of the issue is primarily for the trier of fact[,]" *Hall v. Coates,* 62 Md.App. 252, 265, 489 A.2d 41 (1985), which, in this instance, was the jury not the court. The inconclusive nature of one witness's testimony hardly provided grounds for preventing this case from going to the jury.

■■ Mr. Myers also claims that, as a matter of law, "Jaton's alleged actions, if proven, constitute a superseding, intervening act which would sever any proximate cause attributable to the violation of the ordinance," as does, he maintains, "[t]he actions of Mia Young." Indeed "even if any negligence was attributable to" him, he argues that "it was so attenuated by the superseding acts of Jaton and/or driver Ms. Young as to terminate any liability under the facts as presented in this case."

■■■ "The chain of causation may be broken by an intervening force (negligent or non-negligent) that may, in turn, become a superseding cause, in which case the original tortfeasor's liability will terminate." *Yonce v. Smithkline Beecham Clinical Laboratories, Inc.,* 111 Md.App. 124, 140,

680 A.2d 569 (1996). "It is a superseding cause, whether intelligent or not, if it so entirely supersedes the operation of the defendant's negligence that it alone, without his negligence contributing thereto in the slightest degree, produces the injury." *Id.* (citing *State ex rel. Schiller v. Hecht Co.*, 165 Md. 415, 421, 169 A. 311 (1933)). "[T]he connection is not actually broken," however, "if the intervening event is one which might, in the natural and ordinary course of things, be anticipated as not entirely improbable, and the defendant's negligence is an essential link in the chain of causation." *Id.*

"An intervening force is a superseding cause if the intervening force was not foreseeable at the time of the primary negligence." *Yonce*, 111 Md.App. at 140, 680 A.2d 569. "Normally, the 'foreseeability inquiry is . . . a question of fact to be decided by the trier of fact'; [i]t is only when the facts are undisputed, and are susceptible of but one inference, that the question is one of law for the court. . . ." *Id.* at 141, 680 A.2d 569. (citations omitted).

Myers's negligence was not, as a matter of law, superseded by the acts of Jaton or Ms. Young. The jury could have reasonably concluded, based on the evidence presented, that Mr. Myers should have foreseen the danger posed by his dog to the children outside his house. Had he complied with the law and either confined his dog or leashed him and placed him under the control of an adult, the accident would probably not have occurred, or so the jury could have concluded.

## II.

Appellant contends, in her brief, that the circuit court erred in granting judgment in favor of Mr. and Mrs. Myers as to whether they negligently entrusted the pit bull to Jaton (Count III). At argument before this Court, however, appellant slightly altered her position. She conceded, at that time, that the circuit court was correct in granting judgment in favor of Mrs. Myers, because there was no evidence that Mrs. Myers was an owner of the pit bull. That concession leaves only the question of whether the circuit court erred in grant-

ing judgment in favor of Mr. Myers, the undisputed owner of the dog, on the negligent entrustment claim.

The doctrine of negligent entrustment provides:

> One who supplies directly or through a third person a chattel for use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

*Robb v. Wancowicz,* 119 Md.App. 531, 538, 705 A.2d 125 (1998) (citing Restatement (Second) of Torts § 390 (1965)).

In granting appellees' motion for judgment on the negligent entrustment count, the circuit court stated:

> [F]rom my research it appears that the only place I can find that concept of negligent entrustment discussed is motor vehicle law. And we know now that the only person operating the motor vehicle was Ms. Young. It is a novel theory, but one that doesn't hold water as long as this Court is concerned. . . .

Appellant contends that even though "most of the cases addressing the issue of negligent entrustment are case [sic] involving automobiles, the legal theory as adopted in Maryland is not limited to such claims."

There is indeed no reference to "motor vehicles" in the Maryland definition of that tort. It refers to the negligent entrustment of "chattel" not "motor vehicles". And dogs are chattel under Maryland law, as elsewhere. *See Miller v. Hirschmann,* 170 Md. 145, 183 A. 259 (1936); *People v. Dyer,* 95 Cal.App.4th 448, 115 Cal.Rptr.2d 527 (2002); *Koester v. VCA Animal Hospital,* 244 Mich.App. 173, 624 N.W.2d 209 (2000); *Richardson v. Fairbanks North Star Borough,* 705 P.2d 454 (Alaska 1985); *Soucek v. Banham,* 524 N.W.2d 478 (Minn.App.1995); *Daughen v. Fox,* 372 Pa.Super. 405, 539 A.2d 858 (1988).

"Chattel" is defined as "[m]ovable or transferable property; personal property; esp., a physical object capable of manual delivery and not the subject matter of real property." Black's Law Dictionary 251 (8th ed. 2004). And "personal property" is defined as "[a]ny movable or intangible thing that is subject to ownership and not classified as real property." *Id.* at 1254. Since a dog is a "movable ... thing that is subject to ownership and not classified as real property," it is personal property and thus chattel.

Although the circuit court was correct in observing that, in Maryland, negligent entrustment cases, at least reported ones, have invariably involved motor vehicles, this Court has noted that "[t]he doctrine [of negligent entrustment] is an out-growth of the rule that a vendor who sold an inherently dangerous instrumentality was liable to third persons for injuries sustained upon the principle that such instrumentality was placed in such position that injury might be inflicted, and that without notice or warning to the vendee in respect to the dangerous qualities." *U–Haul Co. v. Rutherford,* 10 Md.App. 373, 376, 270 A.2d 490 (1970). "A motor vehicle," this Court continued, "is a chattel within the doctrine; although it is not an inherently dangerous instrumentality, it is an instrument which is potentially dangerous." *Id.* "Thus," we concluded, a motor vehicle "is susceptible of being used in a manner involving unreasonable risk of physical harm." *Id.*

Pit bulls, like cars, are "potentially dangerous." "The extreme dangerousness of this breed ... is well recognized," the Court of Appeals noted in *Matthews v. Amberwood Associates, Ltd.,* 351 Md. 544, 561, 719 A.2d 119 (1998). And, like a car, a pit bull "is susceptible of being used in a manner involving unreasonable risk of physical harm." That is not to suggest that negligent entrustment cannot be extended to dogs in general, as Indiana has done, see *Hardsaw v. Court-ney,* 665 N.E.2d 603 (Ind.Ct.App.1996) (stating that parents were negligent in entrusting their 12–year–old daughter with care of the family dog in their absence) or to other kinds of chattel as New York has done. *See, e.g., Danielle A. ex rel.*

*Darryl A. v. Christopher P.,* 3 Misc.3d 357, 776 N.Y.S.2d 446 (N.Y.Sup.2004) (holding that a parent negligently entrusted a paint ball gun to her minor child).

Because we find that a pit bull could be the subject of a negligent entrustment claim, we turn to the question whether there was sufficient evidence to submit appellant's negligent entrustment claim to the jury. In urging that there was, appellant points out that the evidence showed that "an unleashed pit bull, a statutorily dangerous instrumentality, was negligently entrusted to . . . a minor, in violation of the county ordinance, and in an area open to the public" and that that entrustment had brought about Monica's injuries.

The elements of negligent entrustment are: "(1) [t]he making available to another a chattel which the supplier (2) knows or should have known the user is likely to use in a manner involving risk of physical harm to others (3) the supplier should expect to be endangered by its use." *Mackey v. Dorsey,* 104 Md.App. 250, 258, 655 A.2d 1333 (1995). Appellant adduced sufficient evidence of all three elements for this claim to have gone to the jury.

### Entrustment

Although "[t]he appellate courts in Maryland have never directly addressed the issue of what constitutes 'making available[,]' [t]he Court of Appeals has stated generally that a 'supplier' for purposes of negligent entrustment may be 'anyone who has the right to permit and the power to prohibit the use of the chattel.'" *Id.* at 258–59, 655 A.2d 1333 (citing *Kahlenberg v. Goldstein,* 290 Md. 477, 489, 431 A.2d 76 (1981)). It is not necessary that the person "furnish the chattel to the entrustee in a direct transfer in order to be found liable." *Morris v. Weddington,* 74 Md.App. 650, 657, 539 A.2d 1145(1988), *rev'd on other grounds,* 320 Md. 674, 579 A.2d 762 (1990).

There was sufficient evidence from which the jury could infer that, on the day of the accident, Mr. Myers entrusted the pit bull to Jaton, either before or after he arrived home. At

his deposition, Mr. Myers testified that he was the owner of the pit bull and that he allowed Jaton to take the dog outside and into the front yard without a leash. It was undisputed that the front yard was unenclosed. The jury, in the absence of any evidence presented by appellees as to what the dog was doing in the front yard unleashed and with Jaton, could have inferred that Jaton on the day in question had Mr. Myers's permission to take the pit bull, unrestrained by leash or barrier, into the front yard.

Moreover, Mr. Myers testified that when he arrived, a few minutes before the accident, he saw Jaton and his friends in the yard with the pit bull, although he did not specify whether the dog was wearing a leash. When he entered the house, without taking possession of the animal or directing Jason to take it indoors, he either implicitly confirmed an existing entrustment or thereby authorized such arrangement. From that testimony, the jury could reasonably infer that Jaton either had been previously entrusted with the dog or that, at that moment, by failing to take any action, Mr. Myers had in effect entrusted the dog to Jaton.

### Knowledge

The next question is whether Myers knew or should have known that Jaton was likely to use the pit bull in a manner involving risk of physical harm to others. "[P]roof of the entrustor's knowledge is an essential element of [a negligent entrustment] cause of action." *Herbert v. Whittle,* 69 Md.App. 273, 282, 517 A.2d 358 (1986). "The entrustor may be charged not only with what he or she actually knew, but with what he or she should have known." *Id.* "Additionally, if the circumstances suggested that further inquiry was appropriate and, despite such circumstances, the entrustor failed to make a reasonable investigation, the entrustor may be liable." *Id.* (citing *Tri–State Truck & Equipment Co. v. Stauffer,* 24 Md.App. 221, 241, 330 A.2d 680 (1975)). Moreover, as we have noted:

[O]ne who supplies a chattel for the use of another who knows its exact character and condition is not entitled to

assume that the other will use it safely if the supplier knows or has reason to know that such other is likely to use it dangerously, as where the other belongs to a class which is notoriously incompetent to use the chattel safely, or lacks the training and experience necessary for such use, or the supplier knows that the other has on other occasions so acted that the supplier should realize that the chattel is likely to be dangerously used, or that the other, though otherwise capable of using the chattel safely, has a propensity of fixed purpose to misuse it.

*Id.* at 282–83, 517 A.2d 358 (citing Restatement (Second) of Torts § 390 Comment b (1965)) (emphasis omitted).

From the evidence presented, the jury could have reasonably concluded that Mr. Myers had such knowledge. Mr. Myers admitted that, before the accident occurred, he saw children walking towards his house, and that he knew that his pit bull was in his unfenced front yard. The dog, according to Monica, was unleashed. Instead of taking the dog inside or exerting any control over the animal, he allowed the dog to stay in the yard with Jaton and his friends.

The jury could have reasonably found that leaving a pit bull unleashed, in an unfenced yard, and under the control of children, constituted a risk of harm to others, and that Jaton, as a child, was not only likely to use the pit bull in a manner involving a risk of harm, but that he was, at the moment he was observed by Mr. Myers, using it in such a manner.

### Causation

"[T]he tort of negligent entrustment involves concurrent causation." *Kahlenberg v. Goldstein,* 290 Md. 477, 489, 431 A.2d 76 (1981). "The negligence of the supplier consists of furnishing the chattel with the requisite knowledge[, which] sets in motion one chain of causation which may or may not in fact result in injury." *Id.* "The other chain of causation involves the conduct of the immediate tortfeasor." *Id.* "If physical harm results to one within the class of foreseeable plaintiffs, as a result of the use of the chattel by the entrustee in a manner which, because of the youth, inexperience or

otherwise of the entrustee, the supplier knew or had reason to know was a likely use and which would involve an unreasonable risk of physical harm, the two chains of causation converge and liability is imposed on the supplier, for his own negligence." *Id.* at 489–90, 431 A.2d 76.

From the evidence presented, the jury could have reasonably found that "chains of causation" converged and imposed liability upon Mr. Myers for negligent entrustment. Mr. Myers left the pit bull, arguably unleashed and clearly unconfined, with Jaton and his friends, knowing that, under the circumstances, Jaton did not have the means to control the dog. He did so even though he was aware that a group of children was in front of his house. That group included Monica. The jury could have found that, given the unreasonable risks posed by these circumstances, Monica was a foreseeable victim.

### III.

Appellant contends that the circuit court erred in granting appellee's motion for judgment on the issue of whether Jaton was "negligent in causing the pitbull dog to chase Monica Griffin." (Count IV).[4] Specifically, the circuit court erred in finding that there was "no testimony as to what [Jaton's] involvement in this case was, other than being present with a dog." "The facts presented provided sufficient evidence," appellant maintains, "for a reasonable jury to [have found] that Jaton's conduct was unreasonable under the circumstances and that he violated his obligation to use ordinary, reasonable care when he threatened Monica with the unleashed pit bull, and in his subsequent conduct in handling

---

4. We note that the demand clause contained in Count IV of the amended complaint states that appellant demands judgment against Jaton and Mrs. Myers, as Parent and Next Friend of Jaton. Through this clause, it appears that appellant is attempting to hold Mrs. Myers jointly liable for her son's actions. Mrs. Myers, however, is not jointly liable. She should only be named, in that count, in a representative capacity of Jaton, and she does not contest that she can be named in such a capacity.

[the pit bull], making him aggressive and causing him to chase Monica." That conduct, she concludes, "set in motion the chain of events leading to Monica's injuries."

As noted above, to establish negligence, one must present evidence showing the existence of a duty, a breach of the duty, and an injury proximately caused by that breach. *Horridge,* 382 Md. at 182, 854 A.2d 1232. Because there is no dispute that Monica "suffered actual injury or loss," we will confine our discussion to the other elements of a negligent cause of action: duty, breach, and proximate cause.

### Duty

"[O]ur analysis of a negligence cause of action usually begins with the question of whether a legally cognizable duty existed[,]" because "there can be no negligence where there is no duty that is due; for negligence is the breach of some duty that one person owes to another." *Patton v. United States of America Rugby Football, Union, Ltd.,* 381 Md. 627, 636, 851 A.2d 566 (2004) (citations omitted). "The notion of duty is founded on the 'responsibility each of us bears to exercise due care to avoid unreasonable risks of harm to others.'" *B.N. v. K.K.,* 312 Md. 135, 141, 538 A.2d 1175 (1988) (citing *Moran v. Fabergé,* 273 Md. 538, 543, 332 A.2d 11 (1975)). "When a reasonable person knows or should have known that certain types of conduct constitute an unreasonable risk of harm to another, he or she has the duty to refrain from that conduct." *B.N.,* 312 Md. at 141, 538 A.2d 1175 (citing *McCance v. Lindau,* 63 Md.App. 504, 514, 492 A.2d 1352 (1985)).

In determining whether such an obligation exists, "it is important to consider the policy reasons supporting a cause of action in negligence. The purpose is to discourage or encourage specific types of behavior by one party to the benefit of another party." *Patton,* 381 Md. at 637, 851 A.2d 566 (citation omitted). When the behavior involved creates a risk of personal injury, "the principal determinant of duty becomes foreseeability." *Id.* "The foreseeability test," it has

been noted, "is simply intended to reflect current societal standards with respect to an acceptable nexus between the negligent act and the ensuing harm." *Id.* (citation omitted). "By the same token, a duty is readily found if it appears highly likely that the conduct in question should have brought about the harm." *B.N.,* 312 Md. at 142, 538 A.2d 1175. As the issue of whether Jaton owed a duty to Monica to act in a manner that would not create an unreasonable risk of harm is a legal question, we shall review it de novo. *See, e.g., Friendly Finance Corp. v. Orbit Chrysler Plymouth Dodge Truck, Inc.,* 378 Md. 337, 343 n. 5, 835 A.2d 1197 (2003).

After viewing the evidence in the light most favorable to appellant, we find that it was reasonably foreseeable that, when Jaton allegedly threatened Monica and her friends that he would sic his pit bull on them and then purportedly did just that, he created an unreasonable risk of harm to them. Monica's flight from a barking and advancing pit bull was foreseeable. That she fled into the street and into the path of an oncoming car was a foreseeable consequence of her fright. That Jaton may not have foreseen the specific nature of the harm that befell Monica is inconsequential. As we have noted, "[a] person will not be relieved of liability for a negligent act if, at the time of that act, the person 'should have foreseen the "general field of danger," not necessarily the specific kind of harm to which the injured party would be subjected as a result of the [person's] negligence.'" *Wankel v. A & B Contractors, Inc.,* 127 Md.App. 128, 159, 732 A.2d 333 (1999) (citing *May v. Giant Food, Inc.,* 122 Md.App. 364, 384, 712 A.2d 166 (1998)).

## Breach

A breach of duty is conduct that falls below the standard of care owed. Normally, "the orbit of the danger as disclosed to the eye of reasonable vigilance would be the orbit of the duty." *Palsgraf v. Long Island Railroad Co.,* 248 N.Y. 339, 343, 162 N.E. 99 (N.Y.1928). But a minor, as Jaton was at the time of the accident, is "bound only to use that degree of care which ordinarily prudent children of the same age,

experience and intelligence are accustomed to use under the same circumstances, and they assume the risk only of dangers, the existence of which they know, or which, in the exercise of this degree of care, they should have known." *State for Use of Taylor v. Barlly,* 216 Md. 94, 102, 140 A.2d 173 (1958).

In this case, the jury had sufficient evidence from which to conclude that Jaton breached a duty of care to Monica. A reasonable child of Jaton's age, experience, and intelligence, should have known that prompting his unleashed pit bull to pursue a group of girls constituted an unreasonable risk of harm to them in general, and to Monica in particular.

## Proximate Cause

"Proximate cause consists of two elements: (1) cause in fact and (2) legally cognizable cause." *Wankel,* 127 Md.App. at 158, 732 A.2d 333 (citing *May,* 122 Md.App. at 383, 712 A.2d 166). "Causation in fact raises the threshold question of 'whether the defendant's conduct *actually* produced the injury.'" *Wankel,* 127 Md.App. at 158, 732 A.2d 333 (citing *Peterson v. Underwood,* 258 Md. 9, 16–17, 264 A.2d 851 (1970)). In determining whether cause in fact exists, we apply either the "but for" test or the "substantial factor" test. *Wankel,* 127 Md.App. at 158, 732 A.2d 333. In *Wankel,* we outlined the differences between the two:

> By its very nature, the "but for" test applies when the injury would not have occurred in the absence of the defendant's negligent act. The "but for" test does not resolve situations in which two independent causes concur to bring about an injury, and either cause, standing alone, would have wrought the identical harm. The "substantial factor" test was created to meet this need but has been used frequently in other situations.

*Id.* at 158–59, 732 A.2d 333 (citation omitted).

In contrast to "causation in fact," legal cause "asks whether the defendant, in light of 'considerations of fairness and social policy,' should be held liable for the injury, even when cause in fact has been established." *Id.* at 159, 732 A.2d

333. "The question of legal causation often involves a determination of whether the injury was foreseeable." *Id.* As we noted earlier in this opinion, "[a] person will not be relieved of liability for a negligent act if, at the time of that act, the person 'should have foreseen the "general field of danger," not necessarily the specific kind of harm to which the injured party would be subjected as a result of the [person's] negligence.' " *Id.*

Monica's testimony provided evidence from which the jury could have reasonably found that Jaton's actions were both the cause in fact and the legal cause of Monica's injuries under either the "but for" or the "substantial factor test." Jaton's conduct was a substantial factor in bringing about Monica's injuries and, but for that conduct, Monica would not have been injured. Monica testified that, after prompting from Jaton, the dog began barking and started towards her. Frightened, she dashed away from the dog and into the street, where she was hit by Ms. Young's car.

Notwithstanding the evidence of Jaton's negligence that was presented, Mrs. Myers argues that the circuit court was correct in granting her motion for judgment. She maintains that appellant's case "amounts to no more than speculation, surmise and conjecture," quoting a declaration of this Court that "a hypothesis of negligence resting on surmise and conjecture is not enough to warrant a submission of the case to a jury." *See Keene v. Arlan's Department Store Baltimore, Inc.*, 35 Md.App. 250, 370 A.2d 124 (1977). Appellant "did not show," she claims, "that it was more likely than not that the dog barked aggressively and moved in appellant's direction based on Jaton Griffin's words or actions."

Contrary to appellee's claim, however, Monica's testimony, established that was what occurred. And her credibility on this point was, of course, an issue for the jury, not the court. *See, e.g., Hall,* 62 Md.App. at 265, 489 A.2d 41 (noting that "the credibility of the witnesses and the weight to be given the evidence on each side of the issue is primarily for the trier of fact.").

And, finally, appellee claims that if Jaton prompted his dog to attack, Jaton's actions "constitute[d] an assault, not negligence." "While it is true that '... the absence of intent is essential to the legal conception of negligence,' the presence of an intent to do an act does not preclude negligence." *Ghassemieh v. Schafer*, 52 Md.App. 31, 40, 447 A.2d 84 (1982) (internal citation omitted). Indeed, as we have observed, there is "no reason why an intentional act that produces unintended consequences cannot be a foundation for a negligence action." *Id.* at 42, 447 A.2d 84.

As the jury could have reasonably found that Jaton's intentional act (urging the pit bull to pursue Monica and her friends) produced an unintended consequence (Monica's flight into the path of a on-coming car), it also had a basis upon which to find Jaton negligent.

**JUDGMENT AS TO COUNT I AS IT PERTAINS TO MICHAEL MYERS REVERSED, BUT AS IT PERTAINS TO JEANNE MYERS AFFIRMED. JUDGMENT AS TO COUNT III AS IT PERTAINS MICHAEL MYERS REVERSED, BUT AS IT PERTAINS TO JEANNE MYERS AFFIRMED. JUDGMENT AS TO COUNT IV REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.[5]**

**COSTS TO BE PAID BY MICHAEL MYERS.**

---

5. The judgments rendered by the circuit court as to Count II and Count VI were not appealed; nor was the court's pretrial dismissal of Count V.